<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRIAN J. McDONNELL,<br>    *Plaintiff*,<br><br> v.<br><br>NEW JERSEY TRANSIT RAIL<br>OPERATIONS,<br><br>    *Defendant*. | Civil No.: 17-7698 (KSH) (CLW)<br><br><br><u>**OPINION**</u> |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

Brian J. McDonnell has sued his employer, New Jersey Transit Rail

Operations (hereafter "NJT"), on the basis of age discrimination and retaliation

under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621

*et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A.

10:5-1 *et seq.*  NJT moves to dismiss the federal claims and asks the Court to

decline to exercise supplemental jurisdiction.

This is a renewed motion by NJT.  Shortly after McDonnell filed a two-

count complaint on September 29, 2017 seeking redress under the ADEA and

unspecified state law claims (D.E. 1), NJT moved to dismiss the federal claim on

sovereign immunity grounds (D.E. 5).  McDonnell filed an amended complaint

(D.E. 9), asserting discrimination and retaliation under the ADEA (Counts One and

Two) and discrimination and retaliation under NJLAD (Counts Three and Four).

NJT again moved to dismiss the ADEA counts.  (D.E. 10.)  While that motion was

pending, then Chief Judge Linares issued a district-wide order (DE 26) staying all claims against NJT that involved the issue of sovereign immunity, based on *Karns v. Shanahan*, 879 F.3d 504, 519 (3d Cir. 2018), *pet. for reh'g en banc denied*, Nos. 16-2171, 16-2172 (3d Cir. Feb. 20, 2018).  After the stay was lifted, the pending motion was re-filed, and it has been fully briefed.  (D.E. 44, 50, 51.)  The Court decides it without oral argument.  *See* L. Civ. R. 78.1.

The Court's analysis begins with the Third Circuit's decision explicitly ruling that "NJ Transit is an arm of the state . . . entitled to claim the protections of Eleventh Amendment immunity."  *Karns*, 879 F.3d at 519.[1]  Armed with that status, NJT relies on United State Supreme Court precedent in *Kimel v. Florida Board of Regents*, 528 U.S. 62, 67 (2000), which held that in passing the ADEA, Congress did not abrogate states' sovereign immunity.

Asserting sovereign immunity in this context is not a new phenomenon. Recently, this Court dismissed with prejudice ADEA claims against NJT in *Battle v. New Jersey Transit Corporation*, Civ. No. 19-21247, slip op. (D.N.J. Jan. 28, 2021), D.E. 16.  There, the plaintiff failed to file opposition to NJT's assertion of

---

[1] McDonnell does not dispute that newly-passed state legislation eliminating sovereign immunity when suits against NJT are filed under enumerated statutes does not apply here.  (*See* D.E. 44-1, Moving Br. 21-22; *see generally* D.E. 50, Opp. Br.)

sovereign immunity, but the Court addressed the substantive issue anyway, relying

on the Supreme Court's unequivocal and controlling language in *Kimel*:

> We hold . . . that, in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals.  State employees are protected by state age discrimination statutes, and may recover money damages from their state employers, in almost every State of the Union.  Those avenues of relief remain available today, just as they were before this decision.

*Battle*, slip op. at 9 (quoting *Kimel*, 528 U.S. at 91-92).

McDonnell contends this Court nonetheless has jurisdiction because,

according to his brief's substantive point heading, "NJ Transit Accepts Federal

Funds Conditioned on Compliance with Federal Equal Employment Laws,

Specifically the ADEA."  (Opp. Br. 4.)  In effect, McDonnell argues NJT has

waived sovereign immunity.  In countering that position, NJT points to a case both

sides agree sets out the appropriate test for exceptions to a State's sovereign

immunity, *Wright v. New Jersey Department of Education*, 115 F. Supp. 3d 490

(D.N.J. 2015), and they agree further that the second of the three enumerated

exceptions is the one to examine here.

In *Wright*, then Chief Judge Simandle identified the exceptions thus:

> State sovereign immunity under the Eleventh Amendment is subject to three exceptions: 1) where Congress abrogates the state's immunity pursuant to a valid exercise of its Fourteenth Amendment power; 2) where a state has validly waived its sovereign immunity and 3) where prospective injunctive relief is sought against state

> officials to end continuing or ongoing violations of federal
> law.

115 F. Supp. 3d at 494 (citing *MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271

F.3d 491, 503 (3d Cir.2001)).  McDonnell argues that NJT "unequivocally waived

its sovereign immunity" by accepting federal funds (a fact not contested) via a

grant from the Federal Transit Administration (the "FTA").  (Opp. Br. 8.)  As an

indication that these funds came with a price – specifically the price of being sued

under the ADEA – McDonnell points to a July 21, 2017 circular the FTA issued as

part of its grant requirements.

The FTA Circular states that the "recipient agrees to comply with all

applicable civil rights statutes and regulations."  (Opp. Br., Ex. B at II-11.)  As to

the ADEA, the Circular provides:

> The recipient agrees to comply with all applicable
> requirements of the Age Discrimination Act of 1975,
> as amended, *42 U.S.C. § 6101 et seq.*, and Health and
> Human Services implementing regulations, "Non-
> discrimination on the Basis of Age in Programs or
> Activities Receiving Federal Financial Assistance,"
> 45 CFR part 90, which prohibit discrimination
> against individuals on the basis of age (40 years or
> older).  In addition, the recipient agrees to comply
> with all applicable requirements of the Age
> Discrimination Act (ADEA), 29 U.S.C. §§ 621
> through 634, and Equal Employment Opportunity
> Commission (EEOC) implementing regulations,
> "Age Discrimination in Employment Act" 29 CFR
> part 1625, which prohibits discrimination against
> individuals on the basis of age.

4

(*Id.* at II-12.)

In his opposition brief, McDonnell asks, appropriately, what conditions placed on the receipt of FTA funding are "sufficient to waive immunity[?]"  (Opp. Br. 6.)  Acknowledging that under controlling precedent the mere acceptance of federal funding does not constitute a waiver of sovereign immunity, and that a plaintiff bears "the unequivocal burden" of establishing waiver, McDonnell relies on the Circular and concludes:

> Here . . . the language of the Circular and 42 U.S.C. §§ 6101 & 6102 make clear that the grant of FTA federal funding is conditioned on compliance with the ADEA, and NJ Transit agreed to comply when it accepted approximately $1.5 billion in funding for its Capital Program.  By accepting billions in federal funding from NJ Transit [sic], which was knowingly conditioned on compliance with non-discrimination laws and the ADEA, NJ Transit unequivocally waived its sovereign immunity in regard to a private ADEA suit brought by an NJ Transit employee.

(*Id.* at 8.)

The Court disagrees.  In elaborating on the second exception to state sovereign immunity, *i.e.*, a state's "valid waiver," Judge Simandle wrote in *Wright* that in the Third Circuit Congress must "state in 'clear and unambiguous terms' in the statute that a waiver of sovereign immunity is a condition of receiving the gift or gratuity."  115 F. Supp. 3d at 495.  Where receipt of federal funds was

held to constitute waiver, Judge Simandle pointed out that the text of the governing

statute was unequivocal.  In the Third Circuit, he gave the example of *M.A. ex rel.*

*E.S. v. State-Operated School District of City of Newark*, where the court found

waiver because the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400

*et seq.*, specifies that "A State shall not be immune under the eleventh amendment

to the Constitution of the United States from suit in Federal court for a violation of

this chapter."  344 F.3d 335, 346-47 (3d Cir. 2003) (quoting 20 U.S.C. § 1403(a)).

He also cited to *Lane v. Pena*, 518 U.S. 187 (1996), which concerned the

Rehabilitation Act Amendments of 1986, concluding that statute "waived the

states' Eleventh Amendment immunity when it contained the following language:

'A State shall not be immune under the Eleventh Amendment of the Constitution

of the United States from suit in Federal court for a violation of section 504 of the

Rehabilitation Act of 1973 . . . .'"  *Wright*, 115 F. Supp. 3d at 496 (quoting *Lane*,

518 U.S. at 198).  In contrast, "the ADEA does not contain any 'clear and

unambiguous' statement of intent to condition receipt of federal funding upon a

waiver of sovereign immunity – and [Wright] has not pointed to any provision in

the ADEA that expresses such an intent."  *Id.*

Contrary to the focus on what is in the ADEA in *Wright,* it appears

that McDonnell is arguing that the source language for the abrogation of

NJT's sovereign immunity appears by way of what he identifies as

"conditions" in the FTA Circular.  (Opp. Br. 8.)  McDonnell inappropriately elevates the text of the Circular as laying down "conditions" for receipt when nowhere does the text specify that.  His argument also elevates the FTA to the position of Congress by claiming that its pronouncements in the Circular have the power actually to abrogate sovereign immunity.

The FTA's issuance of the Circular was not an act of Congress.  As to the "conditions" in the grant of funds, the Third Circuit was explicit in *MCI Telecommunication Corp.*: "Congress must be unmistakably clear and unambiguous in stating its intent to condition receipt of the gratuity on the state's consent to waive its sovereign immunity and to be sued in federal court."  271 F. 3d at 506.  As the court explained, the "clear and ambiguous" requirement makes certain that "the states exercise their choice [to receive federal funds] knowingly and voluntarily, *cognizant of the consequence* . . . ."  *Id.* (emphasis added).

On whether NJT, as an arm of the state of New Jersey, waived its sovereign immunity from an ADEA lawsuit by one of its employees by receiving FTA funds, Congress has not spoken either with a clear voice or at all; and the FTA cannot "speak."  McDonnell has failed to establish a valid waiver by NJT that would constitute an exception to its Eleventh Amendment immunity from this lawsuit. As a consequence, Counts One and Two are dismissed with prejudice.  The Court

declines to exercise supplemental jurisdiction over the claims under NJLAD in the

remaining counts, and the Clerk of the Court is directed to close this case.

                                        /s/ Katharine S. Hayden

Date: June 16, 2021                      Katharine S. Hayden, U.S.D.J.